## J. L. CUNNINGHAM, Respondent, v. H. C. ATTERBURY, Appellant.

**Kansas City Court of Appeals, May 27, 1912.**

1. **REPLEVIN: Contracts: Evidence: Interlineation.** Where it is shown in an action to replevin a house built by a tenant on a farm under an agreement with the owner to permit its removal when possession of the farm was surrendered, that when the farm was subsequently sold and the owner desired to give the purchaser possession, it was agreed that the tenant was to give possession upon the return to him of a certain note and the payment of a specific amount, and that said note was returned and the money paid and a receipt containing said agreement signed by the tenant and delivered, the tenant is not entitled to recover, notwithstanding he, subsequently to the execution and delivery, made interlineations in the receipt by which he reserved to himself the house.

2. **CONTRACTS: FRAUD.** Parties to a contract are presumed to know what the contract contains and where they stand on an equality, are bound by its terms, in the absence of fraud.

Appeal from Linn Circuit Court.—*Hon. Fred Lamb,* Judge.

REVERSED AND REMANDED.

*A. W. Mullins* and *O. F. Libby* for appellant.

*J. A. Collet* and *Bresnahan & West* for respondent.

BROADDUS, P. J.—Replevin for a house. In the year 1907, and for several subsequent years, Simon Schreiber owned a farm in Chariton county, during which time the plaintiff, by the permission of Schreiber, erected a small house on the farm for his use and benefit while he occupied and cultivated the land. This house was to be and remain the plaintiff's property with the privilege to remove the same. By an arrangement between Schreiber and the plaintiff, the

latter put in about ninety acres of the farm in wheat
in the fall of 1910.  Schreiber furnished $100 to buy
the seed wheat to be sown.  The agreement being that
the wheat to be raised was to be divided equally be-
tween the two, the plaintiff to do all the work and
incur all the expense in putting in and harvesting the
crop.

On December 12, 1910, Schreiber sold the land in
question to the defendant Atterbury, and was to give
him possession of the same in the March following. ·
The plaintiff refused to surrender his possession,
claiming that he had the right to such possession for
the year 1911.  There were futile efforts made between
plaintiff and Schreiber to compromise their dispute as
to the right of plaintiff to the possession of the land,
and incidentally other matters.  Afterwards, the de-
fendant agreed with Schreiber that he might lease the
farm to plaintiff for the year 1911, and that he would
accept such lease in lieu of possession.

Schreiber, who lived in another state, came to
Mendon on the 27th of February, 1911, and undertook
to make a settlement with plaintiff.  In the negotia-
tions Schreiber offered, in the presence of defendant,
to lease the farm to plaintiff for the year commenc-
ing March 1, 1911. This offer plaintiff refused on the
ground that he had all the lease he wanted.  However,
plaintiff and Schreiber finally agreed on a settlement,
but it is a matter of dispute as to some of its terms.
One witness testified that plaintiff said to Schreiber,
"you give me $375 and my note and I will give you pos-
session of everything," or as testified to by defend-
ant, plaintiff said:  "I have just one proposition to
make and I am going to quit.  I will take $375 and
you turn over my note and I will release everything
and turn the farm over to you, everything on the farm.
and quit."  Schreiber concluded to accept plaintiff's
proposition and directed Mr. Stewart, a banker who
was present, to close up the business with plaintiff

and pay him the $375 and take a receipt. In writing the receipt Mr. Stewart omitted to mention the note. Plaintiff called attention to the omission and said he would not sign the receipt without his note. Stewart got it from Schreiber, who was not just present at that time, and turned it over to plaintiff, who thereupon put it into his pocket and signed the receipt. Mr. Stewart picked it up and placed it on the counter inside of the railing of the bank. Shortly after, plaintiff asked Stewart to let him see the receipt. After getting it back he took out of his pocket a fountain pen and said: "I don't know that it will be legal, but I am going to take a shot at it," and thereupon he inserted these words, "except right to remove belongings and harvest wheat now on premises." The credit was given to plaintiff for the $375 in the bank, but the deposit slip was not delivered to plaintiff until after he had made the interlineation.

Plaintiff's evidence is somewhat different. He testified that there was no agreement that he was to release his claim on the wheat or the house. It is to be fairly inferred from what he testified to that he signed the receipt and made the interlineation mentioned afterwards. And it stands practically admitted that plaintiff handed the receipt to Stewart after he had signed it, and that he then asked permission to see it, whereupon Stewart handed it back to him and he then made the interlineation with a fountain pen that he took out of his pocket. He testified that Victor Boring then took the receipt outside to Schreiber and returned with the statement that it was all right.

Defendant offered to prove that when the receipt was presented to Schreiber with the interlineation that he repudiated it. Upon the objection of plaintiff the offer was refused.

There was other evidence pro and con, but we believe we have stated sufficient for a proper understanding of the questions at issue on the appeal. The

finding and judgment were for plaintiff and defendant appealed.

Among the assignment of errors is the action of the court in refusing to instruct the jury as requested by defendant in his instruction No. 3, which reads as follows: "If the jury believe and find from the evidence that on the 27th day of February, 1911, the plaintiff J. L. Cunningham, and Simon Schreiber made and entered into a settlement whereby the said Schreiber paid to the said Cunningham the sum of $375, and also surrendered to said Cunningham a note for the sum of $300 given to said Schreiber •by said Cunningham, and that in consideration thereof the said Cunningham agreed to give possession of the west half of section 5, township 55, of range 20, in Chariton county, Missouri, and release said Schreiber from any and all claims and demands of the said Cunningham in or to said land, and that said settlement included the payment to said Cunningham for his interest in a crop of wheat that he had put in on said land in the fall of the year of 1910, the said Schreiber furnishing the seed wheat and the said Cunningham doing the work in putting in the crop, they to share in the wheat grown on said land, should a crop be realized, and including also in said settlement the small frame house in suit in this case, theretofore owned by said Cunningham, and being on said land, the said Cunningham executed the receipt read in evidence by defendant but without the words contained in said receipt as follows: 'except right to remove belongings and harvest wheat now on premises;' and if the jury so find and believe from the evidence they will make and return their verdict for the defendant."

There was no dispute but that by the agreement between plaintiff and Schreiber the plaintiff. was the owner of the house with the right to remove the same. It is also conceded that there arose a dispute between plaintiff and Schreiber as to the former's right to the

possession of the farm for the year 1911, and that there was a compromise of that dispute by the terms of which plaintiff was to surrender possession of the farm. But whether or not in the compromise plaintiff agreed to surrender possession of the farm including the house in controversy was the sole issue in the case, and this issue was fairly presented in defendant's instruction No. 3. If it was agreed that plaintiff was to surrender the farm with the house in consideration that Schreiber surrender to plaintiff his note for $500 and pay to him $375, and that Schreiber did surrender to plaintiff said note and paid him $375 and the writing called a receipt was signed by plaintiff containing the agreement and was, as such, delivered to Stewart, the banker, who was acting for Schreiber, defendant was entitled to recover, notwithstanding plaintiff subsequently made the said interlineation by which he reserved to himself the house.

Plaintiff's second instruction is not the law. It reads as follows: "The jury are instructed that if you shall find and believe from the evidence that plaintiff Cunningham, in the settlement made with Schreiber on February 27, 1911, understood that in such settlement he was reserving the house in question, and if you further find and believe that before such settlement was finally closed the said Schreiber had notice that such was Cunningham's understanding, and that having such notice said Schreiber caused or permitted such settlement to be finally closed without making known to said Cunningham that he, Schreiber, had a different understanding of such settlement, then and in that event the understanding of said Cunningham to the effect that he, Cunningham, was reserving the house, became the contract of the parties and is binding upon them." This is as much as to say that notwithstanding the two parties to the contract made a definite agreement, and there can be no dispute as to its meaning, yet it is not the contract of the par-

ties if one has knowledge that the other has misconceived its terms and thought it contained different terms, and that these different terms became the contract if the other contracting party was aware of the misconception. This seems to be a new view of the law governing contracts. It was plaintiff's business to know what the contract contained. The law presumes he did know. And if he did not it was his own fault. He was not an infant. The parties stood upon an equality and, in the absence of fraud, they are bound by its terms and not by what one of them thought but which it did not contain.

And it was error in refusing to permit defendant to prove that when the receipt was presented to him, after the interlineation, that he refused to accede to the interlineation. Plaintiff had been permitted to prove that he had, when it was presented to him, said it was all right. It was an important matter. If Schreiber acceded to the receipt as interlined it was very persuasive evidence that plaintiff had not agreed to surrender the house with the farm. The evidence offered was to show that he repudiated it when it was presented to him, which went to contradict that offered by plaintiff. For the errors noted the cause is reversed and remanded. All concur.